IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| JEREMIAH QUINN McCALL, <br><br> Plaintiff, <br><br> v. <br><br> DIVISION OF CORRECTIONS, <br> C.O. JOSHUA TART, <br> C.O. ADAM LOGSDON, <br> C.O. GLEN HOOVER, <br> C.O. MATTHEW EAGLESON, <br> SGT. CODY HAER, <br> LT. VAUGHN WHITEMAN, <br> MEGAN THRASHER, <br> WARDEN JEFF NINES, <br><br> Defendants.[1] | Civil Action No.: PX-22-913 |

**MEMORANDUM OPINION**

Plaintiff Jeremiah Quinn McCall, an inmate at North Branch Correctional Institution ("NBCI"), has filed this civil rights action pursuant to 42 U.S.C. § 1983 stemming from correction officers' response to McCall having set fire to his cell. Presently pending is Defendants' Motion to Dismiss, or in the alternative, for Summary Judgment. ECF No. 22. The Court previously advised McCall that he may respond to Defendants' motion, but he did not do so. ECF No. 26. The Court has reviewed the pleadings and finds no need for a hearing. *See* Local Rule 105.6 (D. Md. 2021). For reasons that follow, Defendants' motion, construed as one for summary judgment, shall be granted.[2]

---

[1] The Clerk is directed to amend the docket to reflect the full and correct name for each Defendant.
[2] Defendants also move to seal Exhibit C, a single page excerpt from the Maryland Department of Public Safety and Correctional Services Use of Force Procedures Manual not otherwise publicly available. ECF Nos. 23 & 24. The Court finds that pursuant to Local Rule 105.11 (D. Md. 2021), sealing is warranted and so the motion is granted.

I.      **Background**

The Court construes the evidence in the light most favorable to McCall. On February 28, 2021, McCall was housed in the segregation unit at NBCI. ECF No. 22-3 at 1, ¶ 2. Officers on duty in that area observed "smoke and fire coming from under the door" of McCall's cell. *Id*. at ¶ 3. Defendant Sergeant Haer first responded and sprayed a fire extinguisher under the cell door. *Id*. at ¶ 4. Defendant Lieutenant Whiteman next responded to the cell. *Id*. at ¶ 5. The Defendant officers could not see in McCall's cell because the window had been covered from the inside. *Id*. at ¶ 6. Attempts to communicate with McCall were also unsuccessful. *Id*. at ¶¶ 7-8. Because the Officers grew concerned for McCall's physical safety, they summoned medical staff to the unit and obtained authorization to perform a cell extraction. ECF No. 22-3 at 2, ¶¶ 9-10. A cell extraction is employed when "an inmate's conduct poses a risk of harm to himself or to other persons, Correctional Officers are trained that they can and should restrain the inmate and bring the inmate under control." *Id*. at ¶ 12.

The cell extraction team was assembled and opened the cell door. ECF No. 22-3 at 3, ¶ 16. In response, McCall pushed his mattress against the extraction team. *Id*. Defendant Officers ordered McCall "stop resisting," to "drop the weapon" and put his hands behind his back, but McCall refused to follow commands. *Id*. at ¶ 17 *See also* ECF No. 22 (video footage of incident). The team pushed McCall to the cell wall opposite the door as he remained behind the mattress. ECF No. 22-3 at ¶ 18. Officers next noticed that McCall held in his hand "a sharpened hard plastic knife approximately 5½ inches long." A razor blade was also lying on the floor. *Id*. While officers struggled to gain control of McCall, Whiteman called for a spit mask, although one was never placed on McCall. ECF No. 22 at 2:55.

2

Eventually, McCall was cuffed and escorted out of the cell. ECF No. 22 at 3:45-4:25. Two officers took McCall to the medical unit and slammed him onto the examination table while he was still handcuffed. ECF No. 22 at Ex. D, 4:27-4:29. One officer cursed at McCall, prompting Whiteman to reprimand the officer and remind him that they were being recorded. *Id*.

Two nurses attended to McCall. McCall told one of them that he needed medical attention because he had just been punched and kicked in the back of his head and his back. ECF No. 22 at Ex. D, 7:12 – 7:20. The nurses noted a cut on McCall's right eyebrow and a small bruise on his head, but otherwise he was uninjured. *Id*. at 7:50 – 8:02. McCall was then escorted to a strip cell and, according to the Complaint, placed in segregation with enhanced security for nine days where he was not permitted to have a regular mattress and received minimal medical care. ECF No. 1.

## II.   Standard of Review

Defendants move to dismiss the claims under Federal Rule of Civil Procedure 12(b)(6) or, in the alternative, for summary judgment to be granted in their favor. Such motions implicate the Court's discretion under Rule 12(d). *See Kensington Vol. Fire Dep't., Inc. v. Montgomery Cty.*, 788 F. Supp. 2d 431, 436-37 (D. Md. 2011), *aff'd*, 684 F.3d 462 (4th Cir. 2012). Rule 12(d) provides that when "matters outside the pleadings are presented to and not excluded by the court, the [Rule 12(b)(6)] motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). The Court maintains "'complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it.'" *Wells-Bey v. Kopp*, No. ELH-12-2319, 2013 WL 1700927, at *5 (D. Md. Apr. 16, 2013) (quoting 5C Wright & Miller, *Federal Practice & Procedure* § 1366, at 159 (3d ed. 2004, 2012 Supp.)).

3

McCall was placed on notice that Defendants sought summary judgment, and he was given a fair opportunity to respond. ECF No. 26. Accordingly, the Court treats the motion as one for summary judgment. *See, e.g., Moret v. Harvey*, 381 F. Supp. 2d 458, 464 (D. Md. 2005).

Pursuant to Rule 56(a), "[t]he Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The Court must "view the evidence in the light most favorable to . . . the nonmovant, and draw all reasonable inferences in her favor without weighing the evidence or assessing the witnesses' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002). Importantly, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original). "A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of his pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting Fed. R. Civ. P. 56(e)). A dispute of material fact is only "genuine" if sufficient evidence favoring the nonmoving party exists for the trier of fact to return a verdict for that party. *Anderson*, 477 U.S. at 249-50.

### III. Analysis

Defendant correction officers first contend that as agents of the State, they are immune from suit in their official capacities under the Eleventh Amendment to the United States Constitution. ECF No. 22-1 at 11. *See Pennhurst State Sch. and Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). The Court agrees and so, to the extent that McCall asserts official capacity claims,

the claims are dismissed.  Likewise, the Division of Corrections, as an arm of the State, is also immune from suit and all claims against it are barred.

Turning next to whether any claims against the individual defendants survive challenge, the Court begins with those defendants named but for which no evidence supports any participation in the incident.  No evidence supports that Defendant Megan Thrasher had any personal involvement in the incident.  Nor did Warden Nines play any role in the incident.  At best, the Complaint refers to the Warden only as someone who supposedly "knew" that McCall had been "harassed."  ECF No. 1.  Mere conclusory allegations, wholly unsupported with evidence, must fail.  Summary judgment is granted as to Thrasher and Warden Nines.

As to the remaining Defendant officers involved in the incident, the Complaint sounds in an Eighth Amendment challenge to their "unnecessary and wanton infliction of pain."  *Gregg v. Georgia*, 428 U.S. 153, 173 (1976); *see Estelle v. Gamble*, 429 U.S. 97, 102 (1976); *Scinto v. Stansberry*, 841 F.3d 219, 225 (4th Cir. 2016).  To survive summary judgment on this claim, the record must include some evidence that the officers employed force beyond that necessary to bring the inmate under control and in such a manner that the defendants inflicted more than de minimis harm on the inmate.  *Id.* at 238 (citing *Hudson v. McMillian*, 503 U.S. 1, 9–10 (1992)).  The evidence must further support that the officers acted "maliciously and sadistically for the very purpose of causing harm" rather than "in a good faith effort to maintain or restore discipline."  *Hudson*, 503 U.S. at 6 (quoting *Whitley v. Albers*, 475 U.S. 312, 320–21 (1986)). Whether an officer "acted with wantonness" depends on "(1) the need for the application of force; (2) the relationship between the need and the amount of force that was used; (3) the extent of any reasonably perceived threat that the application of force was intended to quell; and (4) any efforts

made to temper the severity of a forceful response." *Iko*, 535 F.3d at 239 (quoting *Whitley*, 475 U.S. at 321) (internal quotation marks omitted).

The record reflects -- and McCall admits in his Complaint -- that he set a fire inside his cell. When officers responded, McCall refused access and attempted to block the cell door with his mattress. Once officers breached the door, they found McCall armed and continuing to resist their repeated commands. McCall also sustained minor injuries consistent not with excessive force, but with a force necessary to gain control over a volatile and dangerous inmate. Last, even though the officers used foul language and pushed McCall onto the examination table, this alone cannot sustain an Eighth Amendment violation when considering the totality of the circumstances. Defendants are entitled to summary judgment on this claim.

The remaining claims are easily disposed. The Complaint obliquely avers that McCall had been denied constitutionally adequate medical care following the fire. The Eighth Amendment prohibits "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment. *Gregg v. Georgia*, 428 U.S. 153, 173 (1976). To state a claim for constitutional denial of medical care, a plaintiff must demonstrate that defendant's acts or omissions amounted to deliberate indifference as to plaintiff's serious medical needs. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976). "Deliberate indifference is a very high standard – a showing of mere negligence will not meet it." *Grayson v. Peed*, 195 F.3d 692, 695- 96 (4th Cir. 1999).

No evidence supports this claim. Officers transported McCall immediately to the medical exam room where a medical provider examined him, took his vital signs, and cleared him for return to housing. Although the Complaint avers that McCall "could have" suffered infection, nothing suggests that he actually did need any subsequent medical attention. Summary judgment is thus proper on this claim.

The Complaint next appears to assert that Defendants' actions were motivated by retaliatory animus. But the claim is pleaded wholly in conclusory terms. This alone warrants dismissal. *Cf. Gill v. Mooney,* 824 F.2d 192, 194 (2nd Cir. 1987) (quoting *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983)); *Pierce v. King*, 918 F. Supp. 932, 945 (E.D. N.C. 1996) (*judgment vacated on other grounds*, 525 U.S. 802 (1998) (conclusory allegations of retaliation insufficient to state claim). Moreover, no record evidence supports that officers acted in response to McCall's exercise of any constitutionally protected right, *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994). Instead, the officers were responding to McCall's own misconduct. *See Cochran v. Morris*, 73 F.3d 1310, 1317 (4th Cir. 1996) (Retaliation claims are viewed with skepticism because "every act of discipline by prison officials is by definition retaliatory in the sense that it responds directly to prisoner misconduct."). Summary judgment is granted on this claim.

Last, to the extent the Complaint avers that McCall had been subject to unsanitary conditions while in segregation for nine days, again no evidence supports the contention. An unconstitutional conditions claim brought pursuant to the Eighth Amendment asks "whether society considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose anyone unwillingly to such a risk." *Helling v. McKinney*, 509 U.S. 25, 36 (1993). To succeed on this claim, a prisoner must show that "the deprivation of [a] basic human need was objectively sufficiently serious," and that "subjectively the officials acted with a sufficiently culpable state of mind." *Shakka v. Smith*, 71 F.3d 162, 166 (4th Cir. 1995) (emphasis in original) (citation omitted). *See also Farmer v. Brennan*, 511 U.S. 825, 834 (1994). No evidence clears this high hurdle. Nine days confinement as McCall describes, although certainly difficult and unpleasant, does not constitute deprivation of basic human needs or pose an unreasonable risk to his health or safety. This claim also fails.

## IV.  Conclusion

For the foregoing reasons, the Court grants summary judgment on all claims. A separate Order follows.

| | |
|---|---|
| 3/16/23 | /S/ |
| Date | Paula Xinis<br>United States District Judge |